**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| FIRST NATIONAL PROPERTY MANAGEMENT, LLC, <br><br> Plaintiff, <br><br> v. <br><br> KENNETH CHAPMAN, *et al.*, <br><br> Defendants. | Civil Action No. 23-00603 (GC) (JBD) <br><br> **MEMORANDUM OPINION** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court upon Plaintiff First National Property Management, LLC's Motion to Dismiss (ECF No. 25) Defendants' First Counterclaim (ECF No. 23) pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  Defendants opposed, and Plaintiff replied.  (ECF Nos. 31 & 33.)  The Court has carefully considered the parties' submissions and decides the motion without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b).  For the reasons set forth below, and other good cause shown, Plaintiff's motion is **DENIED**.

**I.    BACKGROUND**

First National is a commercial real estate private equity firm and former employer of Defendants Kenneth and Tara Chapman.  (ECF No. 1 ¶¶ 10, 26, 40.)  In January 2023, First National terminated Mr. Chapman after discovering that Mr. Chapman, while employed by First National, had allegedly started running a competing private equity firm, Renaissance Equity Partners LLC (Renaissance).  (*Id.* ¶¶ 2, 76-80, 110-117.)  Ms. Chapman, who was also employed by First National, resigned shortly after Mr. Chapman's termination.  She is similarly accused of

participating in the competing venture while working for First National. (*Id.* ¶¶ 76-109, 118.)

First National filed suit in February 2023, asserting various claims arising from Defendants' creation of Renaissance and wrongful use of Plaintiff's proprietary business plans, processes, and investor information to compete with Plaintiff.[1] (*Id.* ¶¶ 2, 137-259.) Several claims relate to a commercial property known as "Shoprite Plaza," which First National had considered purchasing in 2021. (*Id.* ¶¶ 82-83.) First National alleges that in December 2022, while still employed by First National, the Chapmans acquired title to Shoprite Plaza through subsidiaries owned by Renaissance. (*Id.* ¶ 101.) Defendants then used First National's confidential and proprietary information to solicit investments in exchange for membership interests in the property. (*Id.* ¶¶ 81-84.) In doing so, Defendants allegedly copied First National's "exact business model" and lied to investors about First National's involvement in the project. (*Id.* ¶¶ 84-105.)

In response, Defendants filed an Answer and asserted two counterclaims against First National. (ECF No. 23.) Defendants' first counterclaim alleges that "various officers and principals" of First National made defamatory statements to "several persons in the real estate investing industry, including but not limited to [Renaissance]'s current investors." (*Id.* ¶ 9.) Specifically, Defendants accuse First National of making statements to "third parties" that Defendants "are engaged in and have engaged in illegal activity, including, but not limited to, statements that Kenneth Chapman has violated state and federal law and has been engaged in theft of proprietary information belonging to First National." (*Id.* ¶ 10.) Defendants also accuse First

---

[1] The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 because First National brings Count I of its Complaint under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, *et seq*. (ECF No. 1 ¶¶ 7, 137-148.) The Court has supplemental jurisdiction over First National's remaining state-law claims and Defendants' counterclaims under 28 U.S.C. § 1367(a).

National of falsely telling Defendants' "investors that Mr. Chapman has no right to do an investment deal known as the Shop Rite Plaza deal." (*Id.* ¶ 11.)

First National's Motion to Dismiss Defendants' first counterclaim followed.

## II.     STANDARD OF REVIEW

Courts use the same standard in ruling on a motion to dismiss a counterclaim under Rule 12(b)(6) as they do for a motion to dismiss a complaint. *See RBC Bank (USA) v. Petrozzini*, Civ. No. 12-155, 2012 WL 1965370, at *2 (D.N.J. May 31, 2012). Thus, courts "accept the factual allegations in the [counterclaim] as true, draw all reasonable inferences in favor of the [counterclaimant], and assess whether the [counterclaim] and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *See Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Directors of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)). A counterclaim is facially plausible when it pleads factual content that allows the court to draw the reasonable inference that the counterclaim-defendant is liable for the misconduct alleged. *See Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (citation omitted). When assessing a counterclaim's factual allegations, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *See Wilson*, 57 F.4th at 140 (citation omitted). The party bringing a Rule 12(b)(6) motion bears the burden of showing that the counterclaimant fails to state a claim. *See In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020).

## III.    DISCUSSION

To establish a prime facie claim for defamation under New Jersey law,[2] a plaintiff must

---

[2]     By their briefs, the parties apply New Jersey law to Defendants' first counterclaim for defamation, and the Court has no basis to do otherwise. *See Cruz v. HSBC*, Civ. No. 10-135, 2010 WL 2989987, at *2 n.5 (D.N.J. Jul. 26, 2010); *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 3 F.

3

allege that the defendant "(1) made a false and defamatory statement concerning the plaintiff, (2) communicated the statement to a third party, and (3) had a sufficient degree of fault." *Mangan v. Corp. Synergies Grp., Inc.*, 843 F. Supp. 2d 199, 204 (D.N.J. 2011) (citing *Singer v. Beach Trading Co.*, 876 A.2d 885, 895 (N.J. Super. Ct. App. Div. 2005)); *see also Leang v. Jersey City Bd. of Educ.*, 969 A.2d 1097, 1113 (N.J. 2009). "[A] complaint alleging defamation must include 'facts sufficient to identify the defamatory words, their utterer and the fact of their publication.'" *Crawford v. West Jersey Health Systems*, 847 F. Supp. 1232, 1238 (D.N.J. 1994) (quoting *Zoneraich v. Overlook Hospital*, 514 A.2d 53, 63 (N.J. Super. Ct. App. Div. 1986)). But at the motion-to-dismiss stage, "[i]t is not necessary that every allegation . . . contain a verbatim transcription of the words spoken, accompanied by an exhaustive narrative of the circumstances and an accounting for the damages." *Id.* (internal quotations and citation omitted).

Here, Defendants allege two separate categories of defamatory statements, each of which the Court will address in turn. (*See* ECF No. 23 ¶¶ 9-11); *see also Mangan*, 843 F. Supp. 2d at 204 (identifying each distinct defamatory statement at issue and addressing them separately).

### A. First Category of Statements

The Court begins with the first category of defamatory statements: First National's statements to "third parties" that Defendants "are engaged in and have engaged in illegal activity" and "that [Mr.] Chapman has violated state and federal law and has been engaged in theft of proprietary information belonging to First National." (ECF No. 23 ¶ 10.)

Accepting these allegations as true and viewing them in a light most favorable to Defendants, the Court finds that the counterclaim contains enough factual matter to plausibly state

---

Supp. 2d 518, 522, 538 (D.N.J. 1998) (applying New Jersey law to plaintiffs' claims for defamation where the court exercised original jurisdiction over plaintiffs' federal statutory and constitutional claims and supplemental jurisdiction over plaintiffs' state law defamation claims).

a prima facie case as to this first category of statements. Defendants allege who made the statements (the "officers and principals of First National"); to whom the statements were made ("persons in the real estate investing industry" and Renaissance's "current investors"); and when the statements were made (after Mr. Chapman's departure from First National in January 2023, and since the filing of Plaintiff's complaint in February 2023). (ECF No. 23 ¶¶ 8-10.) *DiAntonio v. Vanguard Funding, LLC*, 111 F. Supp. 3d 579, 583 (D.N.J. 2015). Defendants have also alleged the content of the statements — that Defendants "are engaged in and have engaged in illegal activity" and that Mr. Chapman "has violated state and federal law and has been engaged in theft of proprietary information belonging to First National" — with a sufficient degree of specificity. *See Mangan*, 843 F. Supp. 2d at 202-04 (holding that plaintiff need not plead the precise defamatory statements to provide sufficient notice to the other party under Rule 8(a)).

Defendants further describe Plaintiff's statements as "slanderous," suggesting that the statements were made orally. (ECF No. 23 ¶ 13.) *DiAntonio*, 111 F. Supp. 3d at 583. Defendants contend that these statements "are demonstrably false." (ECF No. 23 ¶ 12.) And Defendants allege a sufficient degree of fault, accusing First National of making the statement "intentionally, willfully, maliciously, and in reckless disregard . . . for the falsity of its statements." (*Id.* ¶¶ 15-16.) *See Churchill Downs, Inc. NLR Entertainment, LLC v. Carstanjen*, Civ. No. 14-3342, 2015 WL 5854134, at *9 (D.N.J. Oct. 5, 2015) (McNulty, J.) (finding "generic allegation[s]" of the defendant's state of mind sufficient to survive a motion to dismiss because "a party's state of mind often cannot be demonstrated directly").

In addition, a "threshold issue" for defamation claims is whether the statements at issue are "reasonably susceptible of a defamatory meaning," which is a question of law. *Kotlikoff v. The Community News*, 444 A.2d 1086, 1088 (N.J. 1982). "To determine if a statement has a

5

defamatory meaning, a court must consider three factors: (1) the content, (2) the verifiability, and (3) the context of the challenged statement." *Leang*, 969 A.2d at 1113 (citation omitted). A statement's verifiability depends on whether the statement "is one of fact or opinion." *Id.* at 1114. A statement is actionable if it can be proven true or false, but mere opinions are generally unactionable. *Id.* Here, the Court finds — indeed, First National does not dispute — that the first category of statements alleging "theft" and "illegal activity" involve verifiable facts sufficient to state a defamation claim. *See Mangan*, 834 F. Supp. 2d at 204 (finding that defendants' accusations that plaintiff engaged in illegal behavior, such as "financial improprieties" and lying about a company's profitability, constitute assertions of fact sufficient to state a defamation claim). The plain meaning of the statements' content and the context in which they were allegedly delivered—to a rival venture's investors—further support a finding that these statements are "reasonably susceptible of a defamatory meaning." *See Leang*, 969 A.2d at 1114.

The Court therefore finds that Defendants have pled sufficient factual matter to state a defamation claim.

First National argues that Defendants' counterclaim fails because it does not sufficiently identify the specific individuals who allegedly uttered the defamatory statements; the individuals to whom the statements were made; the precise dates the statements were made; and whether the statements were written or verbal. (ECF No. 25-1 at 10-11.[3]) But at the motion-to-dismiss stage, "[f]urther specificity regarding who made the statement or to whom the statement was published is not necessary under the federal rules." *DiAntonio*, 111 F. Supp. 3d at 583. For example, contrary to First National's argument, attributing a statement to a corporate entity rather than a specific

---

[3] Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

6

individual is not fatal to a defamation claim. *See Knechtel v. Choicepoint, Inc.*, Civ. No. 08-5018, 2009 WL 4123275, at *5 (D.N.J. Nov. 23, 2009) (finding that plaintiff plausibly stated a defamation claim where plaintiff, without naming specific individuals, accused corporate entities of communicating false information to credit reporting agencies). Moreover, Defendants have identified the defamers as "various officers and principals of First National" (ECF No. 23 ¶ 9), a finite and definable group of individuals. *See Churchill Downs*, 2015 WL 5854134, at *8 (ruling that a complaint alleging that defamatory statements were made to "third parties in the casino industry" was sufficient to survive a motion to dismiss because it "generically define[d] a class of persons"); *DiAntonio*, 111 F. Supp. 3d at 583 (Hillman, J.) (noting that a plaintiff need not specifically name the person who made the statements in order to state a defamation claim).

First National's argument that the counterclaim fails for not identifying the "third parties" to whom the statements were made is similarly without merit. (ECF No. 25-1 at 10-11.) To be sure, a claim identifying the statements' recipients only as "third parties," without more, is likely insufficient. *See Foy v. Wakefern Food Corp.*, Civ. No. 09-1683, 2010 WL 147925, at *6 (D.N.J. Jan. 7, 2010) (dismissing claim alleging that defamatory statements were made to unnamed "third parties"). But here, Defendants accuse First National of making the statements to "several persons in the real estate investing industry, including but not limited to [Renaissance]'s current investors." (ECF No. 23 ¶ 9.) Both "persons in the real estate investing industry" and Renaissance's "current investors," although "rather nebulous," are generic "class[es] of persons" sufficient to overcome a motion to dismiss. *See Churchill Downs*, 2015 WL 5854134, at *8 (finding that a complaint identifying the recipients of statements as "third parties in the casino industry" was sufficient to survive a motion to dismiss); *Crawford*, 847 F. Supp. at 1238-39 (finding that plaintiff sufficiently identified the recipients of defamatory statements as "individuals in the medical field practicing

7

within the same geographical area"). First National's attempt to distinguish this case from *Churchill Downs* ignores Paragraph Nine of Defendants' first counterclaim, in which Defendants identify the statements' recipients to a sufficient degree. (*See* ECF No. 25-1 at 10-11; ECF No. 33 at 14-15.)

Finally, First National's reliance on *Novartis Pharmaceuticals Corporation v. Bausch & Lomb, Inc.* is misplaced. Civ. No. 07-5945, 2008 WL 4911868, at *5-6 (D.N.J. Nov. 13, 2008). There, plaintiff Novartis accused defendant B & L of defamation after B & L called Novartis's customers during an audit of Novartis's sales calls. *Id.* at *1-2. Novartis argued that B & L's inquiries "represented to such customers, directly or by implication, that Novartis [was] falsely taking credit for the sales in question" and therefore constituted defamation. *Id.* at *6. The court found that Novartis failed to state a defamation claim because it had not alleged the substance of any defamatory statement and was "request[ing] too great a leap" in assumptions of fact. *Id.* The court also noted that Novartis failed "to allege by whom, or to whom, the . . . statements were made, what words were uttered, or when the statements were made." *Id.* Here, by contrast, Defendants identify the defamers as the "officers and principals of First National," the recipients as "several persons in the real estate investing industry" and Renaissance's "current investors," and specific alleged statements. (ECF No. 23 ¶¶ 9-10.) Nothing in *Novartis* suggests that these details are insufficient to sustain a defamation claim.

For these reasons, the Court finds that Defendants have pled sufficient factual matter to plausibly state a claim for defamation based on this first category of statements.

### B. Second Category of Statements

Defendants next allege that "First National has also told [Defendants'] investors that Mr. Chapman has no right to do an investment deal known as the Shop Rite Plaza deal." (ECF No. 23

8

¶ 11.)

As a threshold matter, First National argues that this second category of statements is not "reasonably susceptible of a defamatory meaning" as a matter of law. (ECF No. 25-1 at 11-13.) *Kotlikoff*, 444 A.2d at 1088. As mentioned, actionable defamation statements can be proven true or false, and opinions are generally unactionable. *Leang*, 969 A.2d at 1113. First National characterizes this statement — that "Mr. Chapman ha[d] no right" to pursue the Shoprite Plaza deal — as an unactionable opinion of "principles and beliefs of right versus wrong, not fact." (ECF No. 25-1 at 13.) In other words, First National contends that this statement, as alleged, unambiguously accuses Mr. Chapman of acting immorally as opposed to illegally. (*See* ECF No. 33 at 15-18.) Therefore, First National argues, this statement is an unverifiable opinion that cannot form the basis of a defamation claim. (*Id.*)

The Court disagrees. Under New Jersey law, a statement expressing an opinion that "impl[ies] false underlying objective facts" can be considered a "mixed opinion" subject to defamation liability. *Mangan*, 834 F. Supp. 2d at 205 (citing *Lynch v. N.J. Educ. Ass'n*, 735 A.2d 1129, 1137 (N.J. 1999)). Courts must look at the statement's content, verifiability, and context to determine whether the statement is a "pure opinion" or actionable defamation. *Id.* at 204-05.

Here, there are multiple different ways a reasonable person could interpret the statement that Mr. Chapman had no "right" to pursue the Shoprite Plaza deal. Such a statement could mean that he lacked a legal basis, moral basis, or both.[4] A statement that Mr. Chapman lacked the *legal* right to pursue the deal is potentially actionable, because it is based on underlying facts that can be proven true or false. *See Mangan*, 843 F. Supp. 2d at 205 (finding statements that plaintiff

---

[4] For example, *Black's Law Dictionary* defines "right," in pertinent part, as "[s]omething that is due to a person by just claim, legal guarantee, *or* moral principle." *Right*, *Black's Law Dictionary* (11th ed. 2019) (emphasis added).

9

engaged in "financial improprieties" constituted actionable "statements of mixed opinion" because they implied underlying facts capable of being proven false). Moreover, this statement's context and content — Mr. Chapman's pursuit of a business deal — could support a reasonable inference that the statement referred to the legality of Mr. Chapman's actions. *See Churchill*, 2015 WL 5854134, at *8 (finding that a defendant's counterclaim based on plaintiff's calling the defendant a "fraud," "thief," and "untrustworthy" might be verifiable and therefore defamatory "particularly, as here, in the context of identified business dealings"). Because this statement can be reasonably interpreted as an accusation of illegal behavior, it would be inappropriate for the Court to dismiss the claim as a statement of pure opinion. *See Mangan*, 834 F. Supp. 2d at 205; *Mick v. Am. Dental Assn'n*, 139 A.2d 570, 576 (N.J. Super. Ct. App. Div. 1958) ("If [the statements at issue] are unambiguous and open only to a single interpretation—whether a defamatory or non-defamatory meaning—the court makes that determination as a matter of law. If the language is ambiguous and is reasonably open to two meanings, one innocent and the other defamatory, then it is for the jury to determine as a question of fact which meaning was understood by those to whom the publication was made."). Therefore, this statement is "reasonably susceptible of a defamatory meaning" as a matter of law. *Kotlikoff*, 444 A.2d at 1088.

Further, Defendants have sufficiently stated a plausible claim for relief related to this second statement. Although Defendants generally attribute the statement to "First National" as an entity rather than to specific individuals, this is not fatal for the reasons previously discussed. *See Knechtel*, 2009 WL 4123275, at *5. Paragraph Nine of the counterclaim identifying the defamers as "officers and principals of First National" can be reasonably interpreted as applying to this second alleged statement. (ECF No. 23 ¶¶ 9-11.) This statement was made to Defendants' investors, which is a finite "class of persons" sufficiently pled at the motion-to-dismiss stage. (*Id.*

10

¶ 11.) *See Churchill Downs*, 2015 WL 5854134, at *8. Defendants allege that this second statement is false (ECF No. 23 ¶¶ 11-12), and that First National made the false statement "intentionally, willfully, maliciously, and in reckless disregard . . . for the falsity of its statements" (*id.* ¶¶ 15-16). Thus, Defendants allege false words, the circumstances of their publication, and Plaintiff's fault to a degree sufficient to establish a prima facie case. *Crawford*, 847 F. Supp. at 1238; *DiAntonio*, 111 F. Supp. 3d at 583.

### C. Qualified Privilege

First National argues that even if Defendants' allegations are true, both alleged defamatory statements "are subject to a qualified privilege because they merely summarize the allegations that [First National has] asserted against Defendants." (ECF No. 33 at 18-20.) New Jersey courts have recognized that otherwise defamatory statements may be "privileged" and thus unactionable if they are made "in furtherance of a socially important interest that is entitled to protection, even at the expense of uncompensated harm to a plaintiff's reputation." *Salzano v. North Jersey Media Grp., Inc.*, 993 A.3d 778, 781 (N.J. 2010). This "common law qualified privilege" aims to strike a balance between "protecting reputations against false attacks and serving the public interest of free communication." *Mangan*, 834 F. Supp. 2d at 207 (citing *Cruz v. HSBC*, Civ No. 10-135, 2010 WL 2989987, at *4 (D.N.J. July 26, 2010)).

Statements that accurately report or summarize the contents of a lawsuit enjoy a qualified immunity that can only be overcome by proof of malice. *Arista Records, Inc. v. Flea World, Inc.*, 356 F.Supp.2d 411, 426-27 (D.N.J. 2005). In *Arista*, for example, a press release that accurately reported the filing of a lawsuit and its allegations was qualifiedly immune from a defamation claim. *Id.* at 427. In *Salzano*, for another, the New Jersey Supreme Court held that a newspaper story accurately reporting that a lawsuit had been filed, and summarizing the lawsuit's allegations, was

11

protected by qualified immunity because "it is critical for the press to be able to report fairly and accurately on every aspect of the administration of justice, including the complaint and answer, without fear of having to defend a defamation case and without the inhibitory effect of such fear." 993 A.3d at 790-91.

These cases, cited by First National, are inapposite here. Defendants do not allege that First National merely reported the existence of a legal proceeding or summarized its complaint's allegations. Rather, Defendants allege that First National falsely told Defendants' investors and "several persons in the real estate investing industry" that Defendants had stolen proprietary information and had "no right" to pursue the Shoprite Plaza deal. (ECF No. 23 ¶¶ 9-11.) These statements to interested third-party investors are distinguishable from the public reports of ongoing legal proceedings that were protected in *Arista* and *Salzano*. Unlike the statements in those cases, First National's statements, as alleged, do not implicate the "public interest of free communication." *See Mangan*, 834 F. Supp. 2d at 207. The affirmative defense of a qualified privilege is not "apparent from the face of the complaint," and it would therefore be inappropriate at this stage to dismiss the counterclaim on this basis. *See id.* at 208-09.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff First National's Motion to Dismiss (ECF No. 25) is **DENIED**. An appropriate Order follows.

Dated: January 22, 2024

*Georgette Castner*
GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE